Marci **GUTMAN**, Plaintiff,

v.

**QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., et al.,** Defendants.

Case No. 09–22939–CIV.

United States District Court, S.D. Florida.

April 7, 2010.

---

**1328**

Joshua Michael Entin, Mendy Halberstam, Rosen Switkes & Entin P.L., Miami Beach, FL, for Plaintiff.

Frank C. Morris, Jr., Epstein Becker & Green, Washington, DC, Kevin Eugene Vance, Richard David Tuschman, Epstein Becker & Green, Miami, FL, for Defendants.

## ORDER ON MOTION TO DISMISS

URSULA UNGARO, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Counts II, III, and IV of the Amended Complaint, filed on January 29, 2010. (D.E. 24.) Plaintiff filed her Response to Defendants' Motion to Dismiss on March 2, 2010. (D.E. 29.) And Defendants filed their Reply Memorandum of Law In Further Support of Motion to Dismiss Counts II, III and IV of the Amended Complaint on March 12, 2010. (D.E. 30.)

THE COURT has considered the Motion and pertinent portions of the record and is otherwise fully advised in the premises.

### Background

Ilana Gutman[1] is an individual suffering from various disabilities, including: Cerebral Palsy, limited vision, and speech impairments. (Am. Compl. ¶ 5.) Ilana Gutman's disabilities impair many of her major life functions and she is wheel-chair bound. (Am. Compl. ¶ 5.) Further, Ilana Gutman requires the use of a service animal to help her perform every day tasks.

---

1. Plaintiff, Marci Gutman, Ilana Gutman's mother, is Ilana Gutman's legal guardian and brings this suit on her behalf.

(Am. Compl. ¶ 5.) Defendants operate a clinical laboratories in Miami, Florida. (Am. Compl. ¶¶ 1 & 2.)

On or around July 11, 2009, Ilana Gutman visited Defendants' laboratory for the purpose of obtaining a medically required blood test.[2] (Am. Compl. ¶ 7.) Ilana Gutman was accompanied by her mother and her certified service animal, a Golden Retriever. (Am. Compl. ¶ 9.) Upon arrival, Ilana Gutman's mother requested that the facility promptly perform Ilana's blood test because she was fasting prior to the test as required; however, Ilana's mother was dismissively told that Ilana would have to wait 45 minutes. (Am. Compl. ¶¶ 10 & 11.) After over an hour of waiting, one of Defendants' employees noticed the Golden Retriever and yelled across the room, in front of other patrons, that Ilana Gutman, her mother, and her service animal would have to leave. (Am. Compl. ¶ 12.) Ilana Gutman and her mother attempted to explain that the Golden Retriever was a certified service animal, but Defendants' employees insisted upon the public expulsion, to the great humiliation and embarrassment of Ilana Gutman. (Am. Compl. ¶ 13.) Ilana Gutman's mother attempted to explain to Defendants' employees that they were acting in violation of numerous laws and requested to speak to a supervisor, but her efforts were of no avail. (Am. Compl. ¶¶ 14 & 15.) A few minutes later, Ilana Gutman and her mother were told they would have to leave, but that if they still wished to have Ilana's blood drawn, Defendants' employees would meet them at their car in the parking lot where they would take Ilana's blood.[3] (Am. Compl. ¶ 16.) Ilana Gutman was effectively expelled from the facility and was forced to have her blood drawn in the cramped and unsterile environment of a parked car which caused significant bruising on her arm. (Am. Compl. ¶ 19.)

Thereafter, Ilana Gutman's mother—Plaintiff—filed a four-count Complaint against Defendants on behalf of Ilana. In Count I of the Complaint Plaintiff alleged violations of the Americans with Disabilities Act of 1990 (the "ADA") and sought injunctive relief. In Count II, Plaintiff alleged violation of Florida's service animal statute, Fla. Stat. § 413.08(3), and sought both damages and injunctive relief. In Count III, Plaintiff alleged intentional infliction of emotional distress and sought damages. Finally, in Count IV, Plaintiff alleged negligence for exposing Ilana to unsanitary conditions while extracting her blood and causing injury and sought damages.

Defendants moved to dismiss Counts II, III and IV for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The Court dismissed Count II with prejudice because Fla. Stat. § 413.08(3) does not explicitly create a private right of action for the interference with the right of a disabled person to be accompanied by an animal. The Court dismissed Count III without prejudice because Plaintiff failed to allege outrageous conduct. Finally, the Court dismissed Count IV without prejudice because Plaintiff did not oppose dismissal and stated her intention to amend

---

2. Ilana Gutman actually visited two of Defendants' laboratories. Ilana Gutman made an appointment at a first laboratory because it was listed as handicap-accessible, but the handicap-accessible features were unavailable upon her arrival due to construction. (Am. Compl. ¶¶ 8 & 9). Accordingly, Ilana Gutman traveled to a second location where the events in question took place. (Am. Compl. ¶ 9.)

3. During this time, Defendants' employees explained that, as a medical facility, the laboratory was not bound by the various state and federal statutes governing handicap accessibility and service animal accessibility. (Am. Compl. ¶ 17.)

Count IV to re-plead her claim for negligence.

Accordingly, Plaintiff filed the instant four-count Amended Complaint. In the Amended Complaint, Plaintiff maintains her ADA claim in Count I, but abandons her intentional infliction of emotional distress claim. Instead, Plaintiff brings new negligence claims in Counts II through IV. In Count II, Plaintiff alleges Defendants negligently supervised their employees resulting in the drawing of Ilana's blood in an unsafe and unsanitary manner. In Count III, Plaintiff alleges Defendants negligently supervised their employees resulting in discrimination against Ilana in violation of the ADA. Finally, in Count IV, Plaintiff alleges Defendants negligently trained their employees resulting in discrimination against Ilana in violation of the ADA. Defendants move to dismiss Counts II, III and IV pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

### Standard of Review

In order to state a claim, Fed.R.Civ.P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiffs complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citation omitted). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* (citation omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* (internal quotations and citation omitted). Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* (citation omitted).

### Discussion

Defendants argue that Count II fails because Plaintiff fails to meet the pre-suit notice requirements for medical negligence claims under Fla. Stat. § 766.106 (2009) and that Counts III and IV fail because the underlying wrong in a negligent supervision and negligent training claim must be based on an injury resulting from a common law tort. Defendants are correct.

### I

■ Defendants argue that Plaintiff's negligent supervision claim in Count II should be dismissed for failure to comply with the pre-suit requirements under Fla. Stat. § 766.106. This statute requires notice ninety days prior to filing claims for "medical malpractice" or "medical negligence" or any claims "arising out of the rendering of, or the failure to render, medical care or services." *See* Fla. Stat. § 766.106(1)-(3).

Defendants argue that Plaintiffs negligent supervision claim is subject to the pre-suit notice requirements under Fla. Stat. § 766.106 because it arises out of the rendering of medical services. Courts have consistently held that similar claims arising from lab tests and blood-related procedures are subject to the pre-suit requirements under Fla. Stat. § 766.106. *See Mt. Sinai Med. Ctr. v. Fotea,* 937 So.2d 146, 147 (Fla. 3d DCA 2006) (holding that claim for improper commitment under the Baker Act resulting from erroneous blood and urine tests "clearly ar[ose] out of the rendering of medical services" and was subject to Fla. Stat. § 766.106); *Lifesouth Cmty. Blood Ctrs., Inc. v. Fitchner,* 970 So.2d 379, 381 (Fla. 1st DCA 2007) (holding that claim for negligent screening of donor blood arose from the rendering of a medical service and was subject to Fla. Stat. § 766.106).

Indeed, Plaintiff does not argue that the drawing of blood for the purpose of obtaining a medically required blood test is not a medical service. Instead, Plaintiff argues that a claim for negligent supervision resulting in the improper taking of a blood sample (as opposed to a direct claim for negligent taking of a blood sample) arises out of administrative negligence, not the rendering of medical services. Plaintiff is incorrect. *See St. Anthony's Hosp., Inc. v. Lewis,* 652 So.2d 386 (Fla. 2d DCA 1995) (holding that negligent supervision claim was subject to Fla. Stat. Ch. 766 where underlying conduct was negligent rendering of medical services.) The cases cited by Plaintiff regarding sexual battery committed by doctors are inapposite. *See Burke v. Snyder,* 899 So.2d 336, 339 (Fla. 4th DCA 2005) (holding a

doctor's sexual misconduct does not arise from the rendering of medical services); *Buchanan v. Lieberman,* 526 So.2d 969 (Fla. 5th DCA 1988) ("The battery only remotely arose from a doctor-patient relationship, that is, the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctor's office.") Here, Plaintiff alleges that the unprofessional manner in which Ilana received medical services caused her injury; "due to the cramped and unsterile environment upon which the employees were drawing Ilana's blood sample, Ilana suffered significant bruising on her arm." These allegations are necessary to and inextricably intertwined with Plaintiff's negligent supervision claim, which is, therefore, subject to the pre-suit notice requirements of Fla. Stat. § 766.106. Thus, because Plaintiff failed to comply with pre-suit notice requirements, the Court dismisses Count II.

## II

Defendants argue that Plaintiff's negligent supervision claim in Count III and negligent training claim in Count IV should be dismissed because the underlying wrong is not a common law tort. "To prevail on a claim of negligent supervision, retention, or training, the plaintiff must demonstrate that the defendant employer owes a duty to the plaintiff, the breach of which is the proximate cause of the plaintiff's injuries." *Latson v. Hartford Ins.,* 2006 WL 485097, *4 (M.D.Fla. Feb. 28, 2006).[4] And Defendants are correct that the underlying wrong for either claim must be a common law tort. *See Footstar Corp. v. Doe,* 932 So.2d 1272, 1278 (Fla. 2d DCA 2006) ("The underlying wrong alleg-

---

4. "Negligent supervision occurs when an employer knows or has reason to know that it is necessary to control an employee to prevent the employee from intentionally harming others, has the ability to control his employee and knows of the necessity and opportunity

for exercising such control." *Id.* Negligent training occurs when an employer "was negligent in the implementation or operation of the training program." *Mercado v. City of Orlando,* 407 F.3d 1152, 1162 (11th Cir.2005).

edly committed by an employee in a negligent supervision or a negligent retention claim must be based on an injury resulting from a tort which is recognized under common law."); *Scelta v. Delicatessen Support Serv., Inc.,* 57 F.Supp.2d 1327, 1348 (M.D.Fla.1999) (same).

■ Plaintiff argues that she has alleged an injury resulting from an underlying tort in Counts III and IV: "Gutman has alleged an underlying tort—the breach of Defendants' duty to take a blood test in a reasonably prudent manner." (D.E. 29.) However, plaintiffs argument does not comport with the actual allegations in her Complaint. In Counts III and IV of the Amended Complaint Plaintiff alleges Ilana was injured "when Defendants' employees unlawfully discriminated against her in violation of the ADA and refused to grant her equal access to the Facility." (Am. Compl. ¶¶ 49 & 56.) Indeed, Counts III and IV are titled "Negligent Supervision—ADA" and "Negligent Training—ADA," respectively. Thus, because the underlying injury in Count III and IV results from violation of the ADA, which is not a recognized common law tort, Plaintiff fails to state a claim for negligent supervision or training.[5] *See Freese v. Wuesthoff Health Sys., Inc.,* 2006 WL 1382111, *9 (M.D.Fla. May 19, 2006) (granting defendant's motion to dismiss and explaining that "Freese's claims stem from the failure of Wuesthoff to correct a situation in which Freese alleges that supervisors and employees harassed and discriminated against her in

violation of Title VII, the ADEA and FCRA. These are not common law causes of action").

In the alternative, even if Plaintiff was correct that, as alleged, the underlying injury resulted from the common law tort of negligent taking of a blood sample, these claims would fail for lack of notice under Fla. Stat. § 766.106 as with the negligent supervision claim in Count II. *See, e.g., Lewis,* 652 So.2d 386. Accordingly, the Court dismisses Counts III and IV.

Accordingly, it is hereby

ORDERED and ADJUDGED that Defendant's Motion to Dismiss (D.E. 24) is GRANTED. Counts II, III, and IV of the Amended Complaint are DISMISSED.

---

5. Not a single case cited by Plaintiff recognizes a cause of action for negligent supervision and training based upon an underlying violation of the ADA under Florida law. *See Tallahassee Furniture Co. Inc. v. Harrison,* 583 So.2d 744, 750 (Fla. 1st DCA 1991) (plaintiff's negligent retention was based on an underlying tort of battery committed by defendant's employee); *Byrd, et al. v. Richardson-Greenshields Sec., Inc., et al.,* 552 So.2d 1099, 1100 (Fla.1989) (plaintiff's negligent

hiring and negligent retention claim was based on an underlying torts for assault and battery and intentional infliction of emotional distress); *Mullen v. Topper's Salon and Health Spa, Inc.,* 99 F.Supp.2d 553, 555 (E.D.Pa. 2000) (not decided under Florida law); *Smith–Henze v. Edwin Gould Servs. for Children and Families,* 2006 WL 3771092 (S.D.N.Y.2006) (not decided under Florida law).