[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16364
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-01866-CV-ORL-31GJK

DANA R. BLICKLEY,

Plaintiff-Appellee,

versus

JIM FORD, in his individual capacity
and in his official capacity as Brevard
County Property Appraiser,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 3, 2010)

Before TJOFLAT, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

This is a First Amendment retaliation suit brought pursuant to 42 U.S.C. § 1983 by Dana Blickley, a former employee of the Brevard County Property Appraiser ("BCPA"), against the BCPA, and Jim Ford, in his individual capacity. Following some discovery, Ford moved the district court for a summary judgment based on the defense of qualified immunity. The court denied his motion. Ford now appeals the ruling. We reverse.

I.

In her complaint, Blickley alleged that Ford improperly terminated her employment, as Director of Tax Roll and CAMA Systems, for exercising her First Amendment rights. According to Blickley, Ford called Blickley to a meeting on May 9, 2006. When she arrived at the meeting, Ford told her that he was disappointed in her for telling other people that he was having an affair with another of his employees, Dawn Averill. Blickley denied telling anyone about the affair.

Blickley and Ford then discussed Averill's lack of qualifications and rapid advancement in his office. They also discussed the impact on the office when Ford left the premises to spend time with Averill. Blickley felt that Ford "was putting me in a position where I was having to look the other way with regard to his unethical and potentially unlawful behavior." Blickley also felt guilty about her

2

knowledge of the affair because of her friendship with Ford's then-wife. Several months after this meeting, Ford terminated Blickley's employment.

The district court denied Ford summary judgment based on qualified immunity on the theory that a genuine issue of material fact as to whether (1) Blickley spoke to Ford as part of her official duties and (2) her speech was on a matter of public concern. Whether the law was clearly established, so as to entitle Ford to qualified immunity, was, in the court's view, contingent upon whether her comments were on a matter of public concern and thus upon the resolution of an issue of fact.

In his brief on appeal, Ford argues that he was entitled to qualified immunity as a matter of law because Blickley did not speak as a citizen, but as a public employee, and, moreover, what she said was not on a matter of public concern. Even if it was, he continues, that her speech was constitutionally protected had not been clearly established at the time he terminated her employment.[1]

II.

---

[1] Blickley argues that this court lacks jurisdiction over Ford's interlocutory appeal. We disagree. We have interlocutory jurisdiction over legal issues that are the basis for the denial of qualified immunity. *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). Thus, we have jurisdiction where the appeal is based on the assertion that, even on the plaintiff's version of the facts, the defendant is entitled to qualified immunity as a matter of law. *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 (11th Cir. 1998). Here, we assume the truth of Blickley's version of the facts and determine only whether Ford is entitled to qualified immunity as a matter of law.

3

Qualified immunity protects municipal officers from liability in § 1983 actions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009), cert. denied, No. 09-420 (U.S. Feb. 22, 2010). The applicability of qualified immunity is subject to a two-part test, which asks whether the officer's conduct amounted to a constitutional violation, and whether the right violated was clearly established at the time of the violation. *Id.* The order of the inquiry is fluid, giving us the flexibility to address the two issues in either order. *Id.* (citing *Pearson v. Callahan*, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

To determine whether a government employee's speech is protected by the First Amendment, we must determine (1) whether the employee spoke as an employee or as a citizen, and (2) whether the speech addressed an issue relating to the mission of the government employer or a matter of public concern. *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007). These issues are questions of law, reviewed *de novo*. *See Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). The district court concluded that material issues of fact existed as to the first issue: whether Blickley spoke as an employee or as a citizen. For purposes of this appeal, we eliminate that fact issue by treating Blickley's speech as having been

4

made as Ford's employee. We therefore move to the second issue, which is dispositive of this appeal.

## II.

If a public employee speaks as a citizen, rather than in her role as a government employee, what she says must also constitute speech on a matter of public concern. *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007). To determine whether the speech was a matter of public concern, we review the content, form, and context of a given statement, as revealed by the whole record. *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir. 2006). Mere generalizations of governmental misconduct are in and of themselves not specific enough to allow us to determine that an employee's speech was on a matter of public concern. *Kurtz v. Vickrey*, 855 F.2d 723, 730 n.4 (11th Cir. 1988).

In performing this analysis, we consider a number of nondispositive factors, such as whether the main thrust of the speech was public or private in nature, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was. *Mitchell*, 468 F.3d at 1283-84; *see also Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct 1684, 1690-91, 75 L.Ed.2d 708 (1983) (holding that speech regarding office morale, confidence and trust in office supervisors, and the need for a grievance committee

were not matters of public concern because the speech was made in the context of a personal workplace grievance and because the employee, qua private citizen, did not seek to bring to light actual or potential wrongdoing). No one factor is dispositive, meaning that "statements with no news-worthy content can be protected," while speech that "lies near the core of the First Amendment's [right to] public speech-may be deemed private speech" when considered in conjunction with the context and the speaker's motivation. *Mitchell*, 468 F.3d at 1284.

"To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. Thus, the mere fact that the topic of the employee's speech was one in which the public might or would have been interested in is of little importance if the purpose of the plaintiff's speech was to raise issues because of her private interest, rather than to raise them in the interest of the public. *Maggio v. Sipple*, 211 F.3d 1346, 1352-53 (11th Cir. 2000). Accordingly, speech is generally not protected by the First Amendment where the plaintiff has admitted that she made the speech for a reason other than out of public concern. *Vila v. Padron*, 484 F.3d 1334, 1340 (11th Cir. 2007) (holding that where a public employee testified that she spoke to a former board member regarding

6

illegal or unethical behavior in order to seek guidance, the speech was not made on a matter of public concern).

Considering the content, context, and form of her speech, Blickley did not speak on a matter of public concern. Viewing her allegations in the light most favorable to her, the speech primarily discussed private issues, and she admitted, both in the district court and here, to having personal motivations for speaking to Ford about his affair. Although the misconduct occurring at Property Appraiser's Office might have been of concern to the public, Blickley was not speaking in the public interest when she discussed these issues with Ford. Thus, her speech was not protected by the First Amendment. Moreover, and to say the least, the pre-existing law did not clearly establish that, given the circumstances, Ford had violated Blickley's rights; Ford is entitled to qualified immunity.

REVERSED.