Ramon FERNANDEZ, Plaintiff,

v.

BAL HARBOUR VILLAGE, Defendant.

Case No. 13–23799–CIV.

United States District Court,
S.D. Florida.

Signed Sept. 29, 2014.

Louis Manuel Barrios–Balbin, Barrios–Balbin, P.A., Coral Gables, FL, for Plaintiff.

Jeffrey Lawrence Hochman, Hudson Carter Gill, Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, PA, Kelly Rains Jesson, Weiss Serota Helfman, Fort Lauderdale, FL, John Joseph Quick, Weiss Serota Helfman Pastoriza Cole & Boniske, P.L., Coral Gables, FL, for Defendant.

*ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT (D.E. 19), DENYING PLAINTIFF'S IMBEDDED REQUEST TO AMEND COMPLAINT, AND CLOSING CASE*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant Bal Harbour Village's (the Village) Motion to Dismiss Amended Complaint (D.E. 19), filed January 13, 2014. Plaintiff filed his Response (D.E. 25) on January 30, 2014, to which the Village filed

**1.** The factual allegations in Plaintiff's Amended Complaint are taken as true. *See Brooks v.*

a Reply on February 24, 2014 (D.E. 30). Upon review of the Motion, Response, Reply, and record, the Court finds as follows.

## I. Background [1]

In December 2004, Plaintiff began to work for Bal Harbour Police Department (BHPD) as a uniformed officer. (D.E. 18 ¶ 9). In October 2006, then-Detective Sergeant Paul Deitado conducted a BHPD Detective's Exam. (*Id.* ¶ 10). Plaintiff took the Detective's Exam along with Officer Edwin Vargas. (*Id.*). Officer Vargas, rather than Plaintiff, was promoted to detective. (*Id.* ¶ 11).

On August 21, 2009, during a Police Benevolent Association (PBA) meeting, Deitado told Plaintiff that he had started an internal affairs investigation against Plaintiff for conducting an unauthorized petition against the proposed changes in the drop time for retiring police officers and employees. (*Id.* ¶ 12). Deitado stopped the investigation after a PBA attorney advised him to do so. (*Id.*).

In March 2011, Deitado made false allegations regarding Plaintiff by stating that Plaintiff said that then-BHPD Police Chief Thomas Hunker was going to promote Officer Greg Matthews to sergeant because of Hunker's friendship with Matthews's father. (*Id.* ¶ 13).

In April 2011, the BHPD conducted a Sergeant's Exam. Plaintiff did not take the Sergeant's Exam based on rumors that Deitado provided the answers to the exam to Vargas and Officer Alex Alvarez. (*Id.* ¶ 14). Vargas and Alvarez took the Sergeant's Exam and were promoted to sergeant. (*Id.* ¶ 15).

On May 3, 2011, the BHPD received an anonymous letter stating that Deitado pro-

*Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

vided Vargas and Alvarez with the answers to the 2011 Sergeant's Exam. (*Id.* ¶ 16). On May 11, 2011, Officer Steven Goldberg told Hunker that Deitado had provided Vargas with the answers to the 2006 Detective's Exam. (*Id.* ¶¶ 10, 19). Goldberg also told Hunker that Matthews was told that Deitado had provided Vargas and Alvarez with information regarding the 2011 Sergeant's Exam. (*Id.* ¶ 20). As a result of the letter, an internal affairs investigation was initiated. (*Id.* ¶ 17).

As part of the internal affairs investigation, Hunker had certain BHPD officers submit DNA samples to see if any of the samples matched the DNA found on the anonymous letter. (*Id.* ¶¶ 22–23). Plaintiff's DNA sample was of a select few that were submitted for testing. (*Id.*). Also as part of the internal affairs investigation, Deitado provided his phone to Captain Michael Daddario to review for incriminating evidence. (*Id.* ¶ 24). Ultimately, the internal affairs investigation found that Deitado had done nothing wrong. (*Id.* ¶ 25).

Plaintiff alleges that Deitado, Vargas, Alvarez, Daddario, and Sergeant Jack Young believed that Plaintiff had authored the anonymous letter. (*Id.* ¶ 26). Plaintiff further alleges that Deitado, Vargas, Alvarez, Young, and Daddario retaliated against Plaintiff by beginning a systematic campaign to make Plaintiff's work environment hostile after the internal affairs investigation had been closed. (*Id.*).

On May 19, 2011, Vargas allegedly called Plaintiff a "rat." (*Id.* ¶ 27). On July 11, 2011, Plaintiff called for back-up and had to wait more than ten minutes before back-up arrived. (*Id.* ¶ 29). On July 21, 2011, Young sent an email to Plaintiff's supervisor, which stated that Plaintiff had made several negative comments regarding Hunker. (*Id.* ¶ 30). From July 2011 through December 2011, Deitado claimed that some of Plaintiff's

arrests were improper and that the arrests were thrown out. (*Id.* ¶ 31). On October 26, 2011, Young alleged that Plaintiff had made derogatory comments towards a BHPD dispatcher. (*Id.* ¶ 32).

On May 14, 2012, Plaintiff filed a Hostile Complaint with Hunker and the Village pursuant to the Village's hostile work environment policy. (*Id.* ¶ 33). As a result of the Hostile Complaint, the BHPD initiated an internal affairs investigation. (*Id.*). Initially, the BHPD appointed Pat Franklin Investigations (Franklin) to conduct the investigation because the BHPD did not have an internal affairs department. (*Id.* ¶ 35). Franklin sent a letter to Hunker, requesting certain BHPD documents. (*Id.*). Hunker refused to produce any documents and directed that the investigation be handled by Miami–Dade Police's Professional Compliance Bureau (PCB). (*Id.* ¶ 36).

On October 4, 2012, during the pendency of the investigation, Vargas approached Plaintiff's wife at her workplace and allegedly intimidated her. (*Id.* ¶ 38). Plaintiff complained to his supervising officer. (*Id.*). Vargas, a superior officer to Plaintiff, subsequently reprimanded Plaintiff for conduct unbecoming a police employee. (*Id.* ¶ 39). Ultimately, the reprimand was reduced to a "counseling." (*Id.*).

In November 2012, at the conclusion of the internal affairs investigation, PCB found no major violations by BHPD personnel based on the allegations set forth in the Hostile Complaint. (*Id.* ¶ 40). Based on the PCB's investigation, the BHPD found that the conduct of only two BHPD employees warranted a "counseling." (*Id.* ¶ 41). The BHPD found that all other allegations set forth in the Hostile Complaint were unsubstantiated. (*Id.*).

On January 25, 2013, Plaintiff was issued a "counseling" based upon a citizen

complaint that Plaintiff was speeding. (*Id.* ¶ 42). In addition to being "counseled," Plaintiff was also reprimanded by being removed from BHPD's vehicle take home program.[2] (*Id.*). Plaintiff requested a copy of the citizen complaint, but he was not provided a copy. (*Id.*).

On January 26, 2013, Plaintiff requested a medical leave of absence. (*Id.* ¶ 43). During his leave, BHPD officers, including Vargas, Young, and Deitado, visited Plaintiff at his home twice a day. (*Id.* ¶ 44). The twice-a-day visits were required under the BHP sick leave policy that Daddario had modified on November 13, 2012. (*Id.*).

Prior to his November 2012 termination, Hunker filed an internal affairs investigation against Plaintiff. (*Id.* ¶ 45). Hunker alleged that (1) Plaintiff failed to notify Hunker of Plaintiff's intention to file a civil lawsuit against a citizen for filing a false complaint and (2) Plaintiff utilized a restricted databases in violation of BHPD policy. (*Id.*). Plaintiff alleges that he did not receive a copy of the allegations until February 19, 2013, in violation of Florida law. (*Id.*). Ultimately, the BHPD reprimanded Plaintiff for improperly using restricted databases.[3] (*Id.*).

On May 31, 2013, the BHPD reprimanded Plaintiff for violating the BHPD sick leave policy. (*Id.* ¶ 47).

Plaintiff subsequently filed a five-count Amended Complaint alleging that the Village: (1) violated the Florida Whistleblower Act; (2) violated his right to privacy under the Florida Constitution; (3) violated his Fourth Amendment rights; (4) negligently retained Deitado and Hunker; and (5) violated his First Amendment rights. (*See* D.E. 18).

The Village filed a Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), asserting that the Amended Complaint fails to state a claim upon which relief could be granted. (D.E. 19). Regarding Count One, the Village argues that Plaintiff has not alleged that he made a statutorily-protected disclosure or that there existed a causal connection between a disclosure and a subsequent adverse action. (*Id.* at 7–9). Regarding Count Two, the Village argues that Plaintiff has not pled all of the required elements for the requested injunctive relief. (*Id.* at 9–10). Regarding Count Three, the Village argues that Plaintiff cannot hold it vicariously liable for the actions of Hunker. (*Id.* at 10–11). Moreover, the Village argues that Plaintiff has not pled sufficient facts to impose municipality liability. (*Id.* at 11–12). Regarding Count Four, the Village argues that the underlying injuries that Hunker and Deitado allegedly committed—retaliation and harassment—are not recognized common law torts in Florida. (*Id.* at 15–16). Lastly, regarding Count Five, the Village argues that Plaintiff's allegedly protected speech was not protected because Plaintiff was speaking as an employee, not as a citizen regarding a matter of public concern. (*Id.* at 16–19).

Plaintiff responds that he has alleged a pattern and practice of gross mismanagement and malfeasance, which constitutes a protected disclosure under the Florida Whistle-blower Act. (D.E. 25 ¶¶ 5–6). Moreover, Plaintiff asserts that the he has alleged that the hostile treatment is causally connected to his disclosure. (*Id.* ¶¶ 8–13). Plaintiff responds that he need not

---

2. Plaintiff alleges that other officers had committed similar or worse offenses and had not been removed from BHPD's vehicle take home program. (D.E. 18 ¶ 42).

3. Plaintiff alleges that other officers were not reprimanded for using restricted databases in violation of BHPD policy. (*Id.* ¶ 46).

allege the elements for injunctive relief with respect to Count Two because he seeks only equitable relief in the form of the return of his DNA. (*Id.* ¶ 15). Plaintiff next responds that he has pled sufficient facts to hold the Village liable for the alleged Fourth Amendment violation because he alleged that Hunker—the final decision maker regarding police activity—ordered the unauthorized DNA inspection. (*Id.* ¶¶ 20–22). Plaintiff next responds that he has alleged an injury resulting from a recognized tort with respect to Count Four. (*Id.* ¶ 29). Specifically, he asserts that Hunker and Deitado violated his right to privacy. (*Id.*). Lastly, Plaintiff responds that he has pled sufficient facts to hold the Village liable for the alleged First Amendment violation because he filed the Hostile Complaint as a concerned citizen, not as an officer. (*Id.* ¶¶ 33–35).

## II. Legal Standards and Applicable Law

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to state a cause of action for which relief may be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir.2007). When conducting this analysis, the Court may examine only the four corners of the complaint. *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir.2002).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Generally, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

## III. Discussion

### A. Count One

■ Generally, retaliation claims under the Florida Whistle-blower Act are analyzed in the same manner as claims brought under Title VII of the Civil Rights Act of 1964. *Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 950–51 (11th Cir.2000); *see also Rice–Lamar v. City of Fort Lauderdale,* 853 So.2d 1125, 1132–33 (Fla.Dist.Ct.App.2003). "To establish a *prima facie* claim for retaliation under Florida's Whistle-blower Act, ... a plaintiff must demonstrate: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events." *Florida Dep't of Children & Families v. Shapiro,* 68 So.3d 298, 305–06 (Fla.Dist.Ct. App.2011). The Florida Whistle-blower Act requires a civil action to be brought "within 180 days after the action prohibited by [the Florida Whistle-blower Act]." Fla. Stat. § 112.3187(8)(b).

Plaintiff's Hostile Complaint is a protected activity because it sets forth information pertaining to the BHPD's alleged personnel gross management, malfeasance, and gross neglect of duty. *See* § 112.3187(5)(b). Plaintiff alleges that, because he filed the Hostile Complaint, he suffered various adverse employment actions. The Court may consider only those

alleged adverse actions for which the 180–day limitations period has not run. *See Kelly v. Lee Cnty. Mosquito Control Dist.*, No. 2:06–cv–290–FTM–99DNF, 2006 WL 3708100, at *2 (M.D.Fla. Dec. 14, 2006) ("[P]laintiff had 180 days [from] when the prohibited action occurred in which to initiate a civil action for this claim with any court of competent jurisdiction."). Plaintiff initiated this action in state court on July 22, 2013. (*See* D.E. 1–2 at 2–16). Accordingly, the Court may consider only those alleged adverse actions that occurred on or after January 23, 2013—180 days prior to the filing of Plaintiff's complaint in state court. Plaintiff alleges three adverse actions that occurred on or after January 23, 2013: (1) on January 25, 2013, the BHPD counseled him for speeding; (2) on April 16, 2013, the BHPD issued him two reprimands for using restricted databases; and (3) on May 31, 2014, the BHPD issued him a reprimand for violating the BHPD sick leave policy.

■ Plaintiff bears the burden of demonstrating that the alleged adverse actions were causally connected to the May 14, 2012 filing of the Hostile Complaint.

> The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. But mere temporal proximity, without more, must be very close. A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the

complaint of retaliation fails as a matter of law.

*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (citations and internal quotation marks omitted). Here, the alleged adverse actions occurred more than eight months after Plaintiff filed the Hostile Compliant. Plaintiff provides no evidence—other than mere temporal proximity—tending to show causation. Thus, Count One fails as a matter of law and is dismissed with prejudice.[4] *See id.*

## B. Count Two

Plaintiff asserts that he seeks "equitable and injunctive relief [in the form of] the return of all of [his] DNA sample and provisions for adequate security that [his] DNA sample has not been contaminated or leaked." (D.E. 18 ¶ 58). Despite Plaintiff's claims to the contrary, the relief that Plaintiff seeks is a mandatory injunction. *See FHR TB, LLC v. TB Isle Resort, LP.*, 865 F.Supp.2d 1172, 1192 (S.D.Fla.2011) (finding that "when [an] injunction would force a party to act, and not simply maintain the status quo, it becomes mandatory").

As an initial matter, the Court finds that this claim is moot because the Village is not in possession of Plaintiff's DNA. The BHPD sent Plaintiff's DNA to a laboratory for analysis. *See Kohler v. Englade*, 365 F.Supp.2d 758, 762 (M.D.La.2005) (denying as moot a plaintiff's request for mandatory injunction where the plaintiff's DNA was not in the possession of the named defendant).

---

4. The Court notes that the first alleged adverse action occurred on October 4, 2012, when Vargas allegedly approached Plaintiff's wife at her workplace. That event occurred more than four months after Plaintiff filed the Hostile Complaint. Accordingly, the Court finds that, even if the statute of limitations had not barred the Court from considering this action, Plaintiff has failed to sufficiently allege a causal connection between this act and the filing of the Hostile Complaint. *See Thomas*, 506 F.3d at 1364.

In any event, Plaintiff has failed to sufficiently allege a claim for mandatory injunctive relief. "[M]andatory injunctions are to be sparingly issued and upon a strong showing of necessity and upon equitable grounds which are clearly apparent." *Fox v. City of W. Palm Beach*, 383 F.2d 189, 194 (5th Cir.1967). "[A] mandatory injunction is proper where a clear legal right has been violated, irreparable harm has been threatened, and there is a lack of an adequate remedy at law." *Freedom Scientific BLV Grp., LLC v. Orient Semiconductor Electronics, Ltd.*, No. 8:13–CV–569–T–30TBM, 2014 WL 1576883, *6 (M.D.Fla. Apr. 17, 2014) (quoting *Legakis v. Loumpos*, 40 So.3d 901, 903 (Fla.Dist.Ct. App.2010)). Plaintiff does not allege that he has suffered an irreparable harm for which there is no adequate remedy at law. Thus, the Court denies his request for mandatory injunctive relief. *See Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (holding that the denial of a preliminary injunction is appropriate where no irreparable injury is alleged and proved).

## C. Counts Three and Five

With respect to Counts Three and Five, Plaintiff seeks relief under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

"[M]unicipalities and other local government units [are] among those persons to whom § 1983 applies"; however, a municipalities' liability under § 1983 is limited. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities may be sued only for their own unconstitutional or ille-gal policies; they may not be sued for the acts of their employees. *Id.* at 691, 98 S.Ct. 2018. As a result, a claim against a municipality under § 1983 must be predicated upon an injury inflicted by governmental policy or custom constituting "official policy." *Id.* at 694, 98 S.Ct. 2018.

Under certain circumstances, a single action taken by a local official may give rise to municipal liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("If the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."). However, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.*

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Id.* at 481–83, 106 S.Ct. 1292 (footnotes and citations omitted).

Regarding Count Three, Plaintiff alleges that Hunker's decision to order Plaintiff to provide DNA was a violation of his Fourth Amendment rights. Plaintiff further alleges that the Village is liable for Hunker's actions because Hunker "was the decision and policy maker for the Village." (D.E. 18 ¶ 59). This statement is wholly conclusory and does support the contention that Hunker was responsible for es-

tablishing final city policy with respect to DNA collection procedures. *See Hudson v. City of Riviera Beach,* 982 F.Supp.2d 1318, 1328 (S.D.Fla.2013). That Hunker may have been a decision and policy maker for the Village "does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur,* 475 U.S. at 481–82, 106 S.Ct. 1292. For the Village to be liable for Hunker's alleged conduct, Plaintiff must have alleged that Hunker was "responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483, 106 S.Ct. 1292. Plaintiff did not. Thus, Plaintiff has failed to state a claim for a violation of his Fourth Amendment rights that is premised on municipal liability. Count Three is dismissed without prejudice.

Regarding Count Five, Plaintiff alleges that BHPD officers violated his First Amendment rights by retaliating against him for filing the Hostile Complaint. Plaintiff further alleges that the Village is liable for the officers' actions because they were acting pursuant to official policies.

▮ To set forth a First Amendment retaliation claim, a public employee must show that:

> (1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the State as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action.

*Vila v. Padron,* 484 F.3d 1334, 1339 (11th Cir.2007). "The first two elements are questions of law that the Court decides." *Id.* In determining whether a public employee is speaking as a citizen on a matter of public concern—as opposed to speaking as an employee on a matter of personal interest—"[a] court must examine the statements at issue and the circumstances under which they are made." *Id.* In per-

forming this analysis, a court must "consider a number of nondispositive factors, such as whether the main thrust of the speech was public or private in nature, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." *Blickley v. Ford,* 390 Fed.Appx. 890, 892 (11th Cir.2010).

▮ Considering the content, context, and form of Plaintiff's Hostile Complaint, the Court finds that Plaintiff was not speaking on a matter of public concern. First, the main thrust of Plaintiff's Hostile Complaint was to serve as a private employee grievance. *See Boyce v. Andrew,* 510 F.3d 1333, 1345 (11th Cir.2007) (holding that speech was not protected where it addressed personal grievances and frustrations with the job). Plaintiff's summations on the last page of the Hostile Complaint make it clear that Plaintiff was concerned almost entirely with his welfare—not the public's. *See Blickley,* 390 Fed.Appx. at 893 (holding that speech was not protected where it primarily discussed private issues).

> The constant pressure that I am under on a daily basis due to Sgt. Paul Deitado's behavior and fixation to damage my reputation, credibility, and livelihood in the department is absolutely unfair and has caused an incredible amount of stress not only on me, but also my family and my health. There have been many times that the stress, fatigue, and mental exhaustion from this ongoing persecution has caused me to feel ill and not be able to attend work. I have to go to work every day thinking, "what will they try to do to me today?"
>
> . . . .
>
> I have a legitimate concern of being wrongly accused of a crime due to my DNA being somewhere out there and realistically could end up at a crime

scene somewhere along with Sgt. Paul Deitado having access to my patrol car, where narcotics could be easily planted. I am most concerned about my personal safety after threats of officers not responding when back up is requested. (D.E. 18–2 at 20). Moreover, throughout the Hostile Complaint, Plaintiff makes reference to how the offending conduct does or could affect his credibility, his reputation, and his career. (*Id.* at 1–3, 8, 10, 12, 17). Next, rather than communicating his concerns to the public at large, Plaintiff communicated his concerns in a private letter to the Village Manager. *See Anderson v. Burke Cnty., Ga.,* 239 F.3d 1216, 1221 (11th Cir.2001) (holding that where concerns are voiced in a letter to president and Board of Trustees, rather than in a public venue, the speech is less likely to be protected). Lastly, the Hostile Complaint makes it clear that Plaintiff's motivation for writing the Hostile Complaint was to complain about what he perceived to be a hostile work environment in an effort to improve that environment. *See Boyce,* 510 F.3d at 1346 (holding that speech was not protected where the plaintiffs' speech was aimed at improving their work environment). Additionally, Plaintiff's attempt to argue that the Hostile Complaint constitutes protected speech because it sheds light on the BHPD's practice and actions is unavailing. *See id.* at 1344 ("A public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." (citation and internal quotation marks omitted)). Thus, Count Five fails as a matter of law and is dismissed with prejudice.

### D. Count Four

 "Negligent retention occurs when, during the course of employment, the employer becomes aware or should

have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Degitz v. S. Mgmt. Servs., Inc.,* 996 F.Supp. 1451, 1461 (M.D.Fla. 1998). "Under Florida law, the underlying wrong allegedly committed by an employee in a ... negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Servs., Inc.,* 57 F.Supp.2d 1327, 1348 (M.D.Fla.1999); *see also Gutman v. Quest Diagnostics Clinical Labs., Inc.,* 707 F.Supp.2d 1327, 1331 (S.D.Fla.2010).

 Plaintiff argues that he has alleged an injury resulting from a recognized tort—"violation of privacy tort." (D.E. 25 ¶ 29). Plaintiff's argument, however, does not comport with the actual allegations in the Amended Complaint. With respect to Count Four, he alleges that he was injured when the Village failed to take action and allowed "Hunker, Deitado and BHPD personnel to retaliate against [him] and attempt[ ] to coerce him into resigning." (*Id.* ¶ 69). Plaintiff's allegations involve an injury that stems from the retaliatory and discriminatory conduct of BHPD personnel. Florida does not recognize claims of retaliatory discharge and employment discrimination under common law. *McElrath v. Burley,* 707 So.2d 836, 839 (Fla.Dist.Ct.App.1998). Thus, because the underlying injury with respect to Count Four involves claims that are not recognized common law torts, Plaintiff fails to state a claim for negligent retention. *See Gutman,* 707 F.Supp.2d at 1332. Count Four is dismissed with prejudice.

### E. Plaintiff's Imbedded Request to Amend Complaint

 In Plaintiff's Response to the Village's Motion to Dismiss, Plaintiff requests

that, "[i]n the event ... that this Court determines that [Plaintiff]'s Amended Complaint ... [is] deficient ..., [Plaintiff] respectfully requests that this Court grant [Plaintiff] additional time to file a new amended complaint." (D.E. 25 ¶ 41). When, as here, a request for leave to amend "is imbedded within an opposition memorandum, the issue has not been raised properly," and the Court may deny that request without further discussion. *Rosenberg v. Gould,* 554 F.3d 962, 967 (11th Cir.2009) (citation and internal quotation marks omitted). Accordingly, Plaintiff's request for additional time to file a new amended complaint is denied.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Village's Motion to Dismiss Amended Complaint (D.E. 19), filed January 13, 2014, is **GRANTED CONSISTENT WITH THIS ORDER;**

2. All pending motions are **DENIED AS MOOT;** and

3. This case is **CLOSED.**