ACTS RETIREMENT–LIFE COMMU-NITIES INC. f/k/a Adult Communities Total Services, Inc., Appellant,

v.

ESTATE OF Robert ZIMMER, Sr., and Maria Rocha, Appellees.

Nos. 4D14–4866, 4D15–626.

District Court of Appeal of Florida, Fourth District.

Nov. 30, 2016.

Guy M. Shir and Patrick Dervishi of Shir Law Group, P.A., Boca Raton, for appellant.

Tim B. Wright of Wright, Ponsoldt & Lozeau, Trial Attorneys, LLP, Stuart, and Alan B. Rose and Donna L. Eng of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., West Palm Beach, for appellee Estate of Robert Zimmer, Sr.

FORST, J.

This case involves a suit brought for negligent supervision, which alleged Robert Zimmer, Sr., was harmed by employees of Appellant, ACTS Retirement–Life Communities, Inc. ("ACTS"). Because we hold that Appellee, the Estate of Zimmer ("the Estate"), failed to prove as a matter of law its negligent supervision count, we reverse the judgment below and remand for entry of a directed verdict in favor of ACTS. This holding renders moot ACTS's arguments related to the trial court's jury instructions, its ruling on ACTS's motion for remittitur, and its ruling on the sufficiency of the Estate's proposal for settlement.

## Background

ACTS is a facility at which Zimmer lived with his wife, and at which he lived alone after his wife's passing. ACTS was referred to as both an "independent living" and "continuing care" facility. Residents live in units similar to condominiums, with their own kitchen and living areas. There are also common areas, including a community dining area, and a health center. If necessary, residents can transfer to an assisted-living residence at the facility. At all times pertinent to this case, Zimmer was living, independently, in his own unit.

While living at ACTS, Zimmer made friends with multiple employees, in particular a culinary and nutrition services manager named Maria. Zimmer gave a variety of "gifts" to these employees, including at least $30,000 in cash and a $42,000 Mercedes to Maria.[1] The nature of these gifts was one of the central issues at trial—whether they truly were unsolicited "tips" or "gratuities," or whether they were the result of exploitive and manipulative actions by employees taking advantage of Zimmer.

Zimmer's son became concerned with his father's finances and, after discovering more information about the gifts, alerted ACTS. After an appropriate and timely investigation, ACTS terminated every employee who had accepted a gift from Zimmer, including Maria, because doing so violated ACTS's internal policy against employees accepting gratuities.

Even after her termination, however, Maria and her husband remained friends with Zimmer. Zimmer requested that ACTS's employees drive him to see Maria at various locations. These employees complied because driving residents was part of their job duties. Maria also continued to see Zimmer by picking him up directly.

Within half a year of the employee terminations, Zimmer died. After his death, the Estate filed suit against ACTS and Maria, alleging various claims including negligent supervision on the part of ACTS. The claims against Maria were settled. At multiple points throughout and after trial, ACTS moved for a directed verdict, which the trial court eventually denied. The jury found in favor of ACTS on all counts except negligent supervision, for which it found ACTS liable in the amount of $50,000.

## Analysis

 "The standard for reviewing a trial court's ruling on a motion for directed verdict is de novo." *Meruelo v. Mark Andrew of the Palm Beaches, Ltd.,* 12 So.3d 247, 250 (Fla. 4th DCA 2009). "[A]n appellate court must affirm the denial of a motion for directed verdict if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party." *Id.*

 "Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Envtl. Prot. v. Hardy,* 907 So.2d 655, 660 (Fla. 5th DCA 2005). Put slightly differently, negligent supervision exists when the defendant "negligently placed [the plaintiff/purported victim] under the supervision of [an employee], when [the defendant] either knew or should have known that [the employee] had the propensity to commit [the torts committed]." *Malicki v. Doe,* 814 So.2d 347, 362 (Fla.2002). In yet another form, a supervisor who "(i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control," "is under a duty to exercise reasonable care so to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them . . . ." *Id.* at 361 n. 14 (emphasis omitted) (quot-

---

1. Our use of the term *"gifts"* throughout this opinion should not be read as a factual determination on this issue; it is purely for stylistic purposes and to avoid unnecessary clutter in sentence structure.

ing RESTATEMENT (SECOND) OF TORTS § 317 (AM. LAW INST. 1965)).

▇▇ It is necessary that the underlying wrong—the actions of the employee or servant—be a tort. *Gutman v. Quest Diagnostics Clinical Labs., Inc.,* 707 F.Supp.2d 1327, 1331 (S.D.Fla.2010); *see also Malicki,* 814 So.2d at 361 n. 14 (quoting the Restatement which lists torts); *Hardy,* 907 So.2d at 661 (referring to torts committed by the employee); *Williams v. Feather Sound, Inc.,* 386 So.2d 1238, 1239–40 (Fla. 2d DCA 1980) (recognizing employer liability for "willful tort[s]" of employees); *Tex. Skaggs, Inc. v. Joannides,* 372 So.2d 985, 987 (Fla. 2d DCA 1979) (agreeing with an argument suggesting an underlying tort is required); *McArthur Jersey Farm Dairy, Inc. v. Burke,* 240 So.2d 198, 200 (Fla. 4th DCA 1970) (focusing on a tort by the servant). Furthermore, it is also necessary that the actions of the employee be performed *outside* the scope of employment. *Total Rehab. & Med. Ctrs., Inc. v. E.B.O.,* 915 So.2d 694, 696–97 (Fla. 3d DCA 2005); *Watson v. City of Hialeah,* 552 So.2d 1146, 1148 (Fla. 3d DCA 1989).

The questions presented in this appeal are therefore (1) whether ACTS was aware, or should have been aware, of a problem with an employee related to a propensity of that employee to commit a tort; (2) whether ACTS failed to take the appropriate further actions; and (3) whether the tort was in fact committed outside the scope of employment. We hold that the Estate failed to show that these elements were established with regard to any specific employee or group of employees.

## A. Alleged negligent supervision of the employees who accepted gifts and were terminated.

▇ We first address the eight employees who were terminated, including Maria. There is no question in this appeal regarding whether there was evidence of an underlying tort, or whether the tortious conduct of these employees was outside the scope of their employment with ACTS. The issues presented are therefore simply whether ACTS knew or should have known of a problem with Maria or other similar employees, and whether ACTS failed to act appropriately after gaining that knowledge.

The Estate raises seven "red flags" in its brief to this Court. It claims that ACTS employees did not report to the administration that Zimmer was isolated; that ACTS employees were accepting tips unbeknownst to the administration; that Zimmer would wait for Maria outside her office; that Maria purchased a cell phone for Zimmer; that Maria called Zimmer her "little stalker"; that Zimmer was behaving erratically, in one instance putting sand in a neighbor's gas tank; and that ACTS continued to allow Zimmer contact with Maria after her termination. None of these, however, reasonably constitute a "red flag" that Maria or any other employee was unfit to be in contact with Zimmer or had a propensity to commit a tort upon him.

The first two "red flags," as well as the final one, merit little consideration. Things that employees never told ACTS's administration about can hardly be said to constitute something ACTS "knew or should have known."[2] And Maria's actions after her firing are irrelevant to the

---

**2.** Of course, there may be situations in which the employer "should have known" about employee misconduct even without being told, but facts supporting such a finding are not present in this case.

negligent supervision claim vis-a-vis Maria because she was no longer being supervised. Zimmer's waiting for Maria and her view of him as a "little stalker" do not suggest that Maria was likely to commit a tort against Zimmer. The fact that Zimmer, who was not in any sense in a dependency situation at ACTS, was engaged in a personal relationship with Maria (and her husband) does not provide a basis to conclude that ACTS should have suspected that Maria had a propensity to commit fraud upon him.

Similarly, Maria's purchase of a cell phone for Zimmer is not indicative of any tort alleged here. Her purchase for him cannot be used to support any knowledge of tortious behavior on the part of Maria. Finally, Zimmer behaving erratically may have raised concerns, but they would have been concerns for his safety because of his own actions. His actions in no way indicate that Maria or any other employee had a propensity to commit a tort upon him. None of these "red flags" could reasonably be viewed as having put ACTS on notice of any problem with its employees, including Maria. As noted above, ACTS is an independent living facility—it is not a nursing home.

■ The Estate has therefore failed to establish any reason that ACTS knew or should have known about a propensity for Maria or other employees to take advantage of Zimmer through his gifts. That is, until ACTS was notified by Zimmer's son of the large amount of cash and gifts that Zimmer had given out. But at that time (after an appropriate investigation), ACTS discharged all the employees who had accepted gifts, including Maria. Terminating an employee is an appropriate follow-up action to discovery of an employee's unfitness. *See Hardy,* 907 So.2d at 660.

### B. Alleged negligent supervision of the employees who were not terminated.

■ We turn next to the group of employees who were never terminated by ACTS: the employees who, following Maria's termination, either drove Zimmer to visits with her or failed to prohibit her from entering the ACTS's premises to pick up Zimmer. There is no indication that these employees ever received gifts from Zimmer, nor that there were any "red flags" that raised or should have raised ACTS's suspicions for those employees' fitness. The Estate argues only that those employees (drivers, security guards, etc.) should have done more to protect Zimmer from himself and from Maria. These employees cannot serve as the basis for negligent supervision on the part of ACTS, however, for two reasons. First, there is no allegation that *these* employees committed any torts. Counsel for the Estate conceded at oral argument that the drivers themselves were not committing any torts by driving Zimmer to Maria's, and instead focused on the torts allegedly being committed by Maria at the destination. The question is not whether Maria committed any torts after her discharge, when she was no longer under the supervision of ACTS. Rather, the pertinent question is whether the individuals who were still employed by ACTS, and thus able to be supervised, acted tortiously. They did not, and so ACTS cannot be liable for negligently supervising them.

■ Separately but relatedly, ACTS also is not liable for negligent supervision of the employees it retained because all of the actions complained about were performed within the scope of those employees' employment. "By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment ...." *City of Boynton*

*Beach v. Weiss,* 120 So.3d 606, 610 (Fla. 4th DCA 2013) (quoting *Watson,* 552 So.2d at 1148).

Transporting Zimmer to whatever destination he wished was the very thing the ACTS drivers were hired to do. Guarding the gate and allowing visitors through was the very thing the gate guards were hired to do. Negligent supervision is simply not the appropriate claim to bring against an employer whose employees are acting within the scope of their duties.

### Conclusion

The Estate failed to introduce evidence sufficient to support the verdict finding ACTS liable for negligent supervision. There was no instance where all elements of negligent supervision were met with regard to any specific employee or group of employees. The employees who were fired, including Maria, had appropriate action taken against them shortly after ACTS became aware of information reasonably putting them on notice of those employees' potentially harmful propensities. ACTS therefore did not negligently supervise any of these employees with respect to Zimmer.

The employees who were retained were acting within the scope of their employment and did not commit any torts in providing transportation for Zimmer or by not barring Maria from socializing with him. Thus, ACTS did not negligently supervise these employees. To the extent that there was "negligent supervision" of Zimmer by ACTS, such action/inaction on the part of the employer itself is not covered by the tort of negligent supervision of its employees.

We therefore reverse the trial court's denial of ACTS's motion for directed verdict and remand for entry thereof. This determination also removes the justification for the trial court's award of attor-

neys' fees to the Estate, which we also reverse.

*Reversed and remanded.*

LEVINE, J., and COLBATH, JEFFREY J., Associate Judge, concur.