[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13000

_____

D.C. Docket No. 6:15-cv-01780-GAP-DCI

SHARON WINTERS, AS PERSONAL REPRESENTATIVE OF THE ESTATE
OF WILLIAM CHARLES WINTERS, II, DECEASED,

Plaintiff - Appellant,

versus

JUSTIN RANUM,
THE CITY OF DAYTONA BEACH,
a municipality,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 13, 2018)

Before JILL PRYOR and HULL, Circuit Judges, and PROCTOR,[*] District Judge.

PER CURIAM:

A night of celebration ended regrettably for William Charles Winters, II, when an altercation resulted in his arrest for battery on a police officer and resisting an officer with violence.  After his charges were dropped, he sued the officer who arrested him and the City of Daytona Beach which hired the officer, bringing a claim under 42 U.S.C. § 1983 for violations of his constitutional rights as well as state law claims for false arrest, assault, battery, and negligent training.  On appeal, Sharon Winters, the personal representative of the estate of William Winters,[1] argues that the district court erred in granting summary judgment in favor of the defendants.  After careful review, we affirm.

## I.    BACKGROUND

One August evening in Daytona Beach, Winters and his three friends went out to celebrate one friend's promotion and another friend's birthday.  They started the evening at an oyster bar, where Winters had a mixed drink.  Over the course of the evening, the friends continued drinking.  By the early morning hours, the group ended up at a pizza restaurant, where surveillance videos captured Winters and one

---

[*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

[1] The original plaintiff, William Winters, is now deceased.  We granted a motion to substitute Sharon Winters as personal representative of Winters's estate.

2

of his friends physically fighting outside of the restaurant while the other two looked on.

Daytona Beach Police Officer Justin Ranum, on duty at a nearby police precinct, received a report of a physical fight in progress. When he pulled up to the restaurant a few minutes later, he saw no fight and asked a nearby taxi driver if it was over. The taxi driver informed Ranum that the fight had moved from the street in front of the restaurant to the small parking lot in the back. Ranum drove his marked police car down the narrow alley next to the restaurant and stopped at the end of the alley next to an old couch. Ranum saw four men, Winters and his friends, in the back parking lot. Winters and one of the men stood face to face, the other man red faced and in a state of disarray.

Upon seeing the police car, the four men began to run in different directions. Winters's friends escaped, two jumping over a wall on the opposite side of the parking lot and another running through the open back door of the restaurant. Winters, however, ran straight toward Ranum and his police car.

Ranum yelled for Winters and the others to stop, but none did. Winters continued to run toward Ranum's car. Ranum, who at this point was getting out of the car and standing in between the open car door and the driver's side door frame, could see that Winters appeared to have been in a fight, with a disheveled look, red face, and rumpled clothing. Winters ran toward Ranum and pushed the car door

3

slightly into the space where Ranum was standing, presumably in an effort to run between the couch and the car. Ranum yelled "stop" a second time and immediately grabbed Winters as he passed the car door. The force of the grab caused both men to fall onto the couch next to them.

Ranum ordered Winters to stop resisting, but Winters refused and a physical altercation ensued. Winters grabbed Ranum's testicles, and Ranum delivered a knee strike to Winters's chest to get Winters to let go. At some point, the couch tipped over and Ranum fell on his left hand, causing severe pain. Winters then attempted to grab Ranum's service weapon. In an effort to stop Winters from taking his weapon, Ranum used his one good hand to hold onto the weapon and delivered another knee strike in Winters's direction. Winters continued to resist, and Ranum punched Winters once with his fist. Eventually Ranum was able to use his body weight to keep Winters secure until another officer arrived to help place Winters under arrest. Ranum was treated for testicular pain and bruising, a fractured hand, and torn ligaments in his fingers.

Winters had no memory of these events. He testified that his last memory of the evening was drinking at the oyster bar. He next remembered waking up in a jail cell, where he spent the day vomiting. He suffered scrapes and abrasions on his legs and arms, two black eyes, a swollen jaw, and bruising on his back, hip, and chest. It is unclear whether all of these injuries arose from his altercation with

4

Ranum; some may have resulted from his fight with his friend.  Although Winters had no permanent physical injuries, he suffered mental distress as a result of the incident.

Winters was charged with battery on a police officer and resisting arrest with violence.  The charges were later dropped.  Winters then brought suit against Ranum and the City of Daytona Beach, alleging six claims:  (1) false arrest against the City, (2) false arrest against Ranum, (3) assault and battery against the City, (4) assault and battery against Ranum, (5) negligent training against the City, and (6) a 42 U.S.C. § 1983 claim against the City for deprivation of Winters's civil rights.  Both Ranum and the City filed motions for summary judgment, which the district court granted.  This is Winters's appeal.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmovant, here, Winters.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1328 (11th Cir. 2008).

## III.    ANALYSIS

On appeal, Winters argues that the district court erred in granting summary judgment in favor of Ranum and the City and failed to view the evidence in the light most favorable to him as the nonmovant.  For the reasons that follow, we disagree.

5

Winters brings a claim against the City under 42 U.S.C. § 1983 for civil rights violations.  Under § 1983, a municipality is liable for constitutional violations committed by the municipality's employees if the plaintiff shows that the municipality "had a policy, custom, or practice that caused the deprivation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).  Winters devotes a portion of his brief to the various ways in which he has demonstrated the City's "policy, custom, or practice."  But there can be no municipal liability under § 1983 absent a constitutional violation.  Here, Winters has failed to show a genuine dispute of material fact that he suffered any constitutional injury—specifically, that his Fourth Amendment rights were violated by a false arrest or Ranum's use of excessive force.  His § 1983 claim against the City therefore fails.

First, as to a Fourth Amendment violation based on false arrest, no constitutional right has been violated if the officer had probable cause to arrest. Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted).

6

We agree with the district court that Ranum had probable cause to arrest Winters for the Florida offense of resisting an officer without violence.[2] "To be guilty of resisting an officer without violence, (1) the officer must be engaged in the lawful execution of a legal duty; and (2) the defendant's action must constitute obstruction or resistance of that lawful duty." *P.B. v. State*, 899 So. 2d 480, 481 (Fla. Dist. Ct. App. 2005). Here, Ranum responded to a report of a physical fight. When he arrived a few minutes later, a witness told him that the fight was in the back parking lot. As he approached the back parking lot, he came upon Winters and his friends; Winters and one friend appeared to have been fighting. Upon seeing Ranum, the men attempted to flee. When Ranum ordered Winters to stop, he was engaged in the lawful execution of a legal duty—he reasonably suspected that Winters had been involved in an unlawful physical fight. Winters's attempt to evade Ranum and push past him therefore constituted obstruction or resistance of that lawful order.

Winters has provided no evidence to contradict Ranum's version of events, and the surveillance videos from the scene are consistent with Ranum's testimony.[3]

---

[2] Although this is not the offense for which Winters was arrested, the lawfulness of an arrest "does not turn on the offense announced by the officer at the time of the arrest." *Lee*, 284 F.3d at 1195-96 (internal quotation marks omitted).

[3] Winters asserts generally that Ranum's version of events is contradicted by video footage of the incident, but we disagree. The video shows Winters and his friend fighting in multiple locations outside the restaurant. The video also shows Ranum arrive at the restaurant, pull up next to a taxi, and then drive down the alley. It shows all four men running as Ranum approaches. And it shows Winters running straight toward Ranum, who is standing in between

7

Instead, Winters argues that material inconsistencies between Ranum's deposition in this case and an earlier deposition he gave during Winters's criminal case, or between Ranum's testimony and the video or other officers' testimony, render Ranum not credible.  Winters points to five examples of what he believes are inconsistencies:  First, in Ranum's deposition in this case, he testified that Winters "told him several things but he couldn't understand what was being said since it was slurred and labored speech," but several years earlier Ranum had testified that he "couldn't recall exactly what [Winters] was saying, but he was verbally responsive."  Appellant's Br. at 9.  Second, when discussing the first knee strike he delivered to Winters, Ranum testified in one deposition that he struck Winters in the chest, but in another deposition that he struck Winters in the arm.  Third, in the earlier deposition Ranum testified that Winters pushed the car door into him, but the video showed otherwise.[4]  Fourth, Ranum testified that he smelled alcohol on Winters's breath, but another police officer testified that he "guess[ed] . . . he did not smell any alcohol."  *Id.* at 10.  Fifth, Ranum testified that he and Winters were

___

his police car and his open driver's side door.  As Winters pushes the car door toward Ranum and slightly shut, Ranum immediately grabs at Winters.  Both men then fall out of view on the video.  Another surveillance video shows the couch falling over, but the position of the cameras is such that no video captures the physical altercation between the two men.  The videos do not appear to us to contradict Ranum's version of events.

[4] Winters also argues that because he did not slam the car door, Ranum had no lawful basis to stop him.  But as we explained above, Ranum had a lawful basis to stop Winters based on the totality of the circumstances surrounding the fight and Winters's attempted flight from the scene despite Ranum's orders to stop.

carried to the couch by their own momentum, but Ranum's supervisor testified that Ranum had told him that they went over to the couch because Winters grabbed Ranum in the groin.

But these inconsistencies—to the extent they can be considered such—are immaterial and thus fail to change our analysis. Viewing the facts in the light most favorable to Winters, Ranum had probable cause to arrest him for the state law crime of resisting an officer without violence. The arrest therefore was lawful and did not violate Winters's Fourth Amendment rights.

Second, as to a Fourth Amendment violation based on excessive force, no constitutional right has been violated unless the amount of force used to arrest is unreasonable. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). "Whether the amount of force used was reasonable is determined objectively 'from the perspective of a reasonable officer on the scene' . . . and requires 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Our decisions demonstrate that the point at which a suspect is handcuffed and poses no risk of danger to the officer often is the pivotal point for excessive-force claims." *Mobley v. Palm Beach Cty. Sheriff*

9

*Dep't*, 783 F.3d 1347, 1356 (11th Cir. 2015) (alteration adopted) (internal quotation marks omitted).

Here, the evidence is undisputed that Winters ran directly at Ranum and that Ranum grabbed Winters in an effort to prevent his escape. Although Ranum admitted to striking Winters with his knee and fist, he testified that he did so only after Winters grabbed him in the testicles and attempted to grab his service weapon, but before Winters was secured and handcuffed. As the Supreme Court has explained, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. We cannot say that Ranum acted unreasonably in light of his testimony that Winters was actively resisting arrest and posed some risk to Ranum. Winters argues that the district court failed to view the facts in his favor, but he has presented no evidence to refute Ranum's testimony. Winters thus has failed to show a genuine dispute of material fact as to whether his Fourth Amendment rights were violated through the use of excessive force. In the absence of a constitutional injury, the district court did not err in granting summary judgment in the City's favor on Winters's § 1983 claim.

Winters also brings a state law claim against the City for negligent training. Under Florida law, a municipality can be "liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents" unless the "'discretionary' function exception to Florida's waiver of sovereign immunity" bars liability. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001). Here, we need not consider whether sovereign immunity bars Winters's negligent training claim because, viewing the facts in the light most favorable to Winters, Ranum had probable cause to arrest Winters, and he used reasonable force in effectuating that arrest. *Cf. Acts Ret.-Life Cmtys., Inc. v. Estate of Zimmer*, 206 So. 3d 112, 115 (Fla. Dist. Ct. App. 2016) (explaining that "the action[] of the employee" in a negligent supervision action must itself be a tort). Because there is no evidence that Ranum's actions were those "of an untrained [officer]" or that "training would have prevented [Ranum] from responding as he did in this situation," *McFarland & Son, Inc. v. Basel*, 727 So. 2d 266, 269 (Fla. Dist. Ct. App. 1999), summary judgment for the City on the negligent training claim was appropriate.

Winters's remaining claims are state law claims for false arrest, assault, and battery. But Winters makes no arguments in his opening brief about any of these claims. Accordingly, the claims have been abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an

11

appellant abandons a claim when he either makes only passing references to it or

raises it in a perfunctory manner without supporting arguments and authority.").[5]

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court order granting

summary judgment in favor of the defendants.

**AFFIRMED.**

---

[5] Even if Winters's complaint could be liberally construed to raise § 1983 claims against Ranum, as Winters appears to assert in his opening brief, we would conclude that such claims were properly dismissed because Ranum would be entitled to qualified immunity. "[T]o defeat qualified immunity [Winters] must first demonstrate an issue of material fact about whether [Ranum] violated his constitutional rights." *Mobley*, 783 F.3d at 1355. As we have explained, Winters has failed to establish a genuine dispute of fact about whether his constitutional rights were violated.