# Third District Court of Appeal
## State of Florida

Opinion filed August 2, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1334
Lower Tribunal No. 21-26163
_____

**Robert Tercier,**
Appellant,

vs.

**University of Miami, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Lopez, Judge.

Nathan Soowal, P.A., and Nathan Soowal (Pompano Beach), for appellant.

Isicoff Ragatz, and Eric D. Isicoff, Teresa Ragatz, and Catherine A. Mancing, for appellee.

Before EMAS, SCALES and LOBREE, JJ.

EMAS, J.

**INTRODUCTION**

Robert Tercier, a former nursing student at the University of Miami, sued the University, alleging he was dismissed from the nursing program based on "discriminatory animus, retaliatory actions and [a] campaign to see to it that [he] be removed from the program." The trial court granted the University's motion to dismiss for failure to state a cause of action, and dismissed the amended complaint with prejudice.

On appeal, Tercier asserts the trial court erred in: (1) dismissing his complaint where Tercier adequately pled claims for breach of contract and negligent supervision; (2) adopting the University's proposed final judgment verbatim and within three hours of receiving same; and (3) dismissing the action with prejudice without first affording Tercier the opportunity to further amend his amended complaint. Because these arguments are without merit, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

In 2017, Tercier was enrolled in the University of Miami's School of Nursing. Four years later, he was dismissed, purportedly based on deficient performance and substandard grades. Tercier contends his poor grades were merely an excuse for the University's dismissal, alleging that throughout his time in the program, he "continuously experienced a high

degree of bias against him from UM's employees and agents as a result of his ethnicity/national origin and gender."

The following is a timeline of events, alleged within the operative complaint, leading to Tercier's dismissal from the University:

● In the Fall of 2017, Tercier participated in the clinical portion of class NUR 619 at the Miami Veterans Affairs Medical Center. Due to a medical condition for which he was treated, he "struggled with the program." The University eventually removed Tercier from the clinical placement, resulting in him "not passing NUR 619."

● In the Fall of 2018, Tercier repeated NUR 619 and passed both the class and its clinical portion.

● In the Spring of 2020, Tercier was placed at Mount Sinai Medical Center for a clinical rotation under clinical coordinator, Jampierre Mato. Mato dismissed Tercier from the clinic soon after the rotation began, without "notice or explanation."

● In January 2020, Tercier met with two University professors, Dr. Gonzalez and Dr. Vladinova. They asked Tercier to resign from the nursing program citing "concerns regarding his clinical skills." He refused to resign and was later dismissed. Tercier successfully appealed the decision.

● Upon returning to the program, Tercier was placed at the University of Miami Hospital to continue his clinical work.

● In the summer of 2020, "Tercier received falsified evaluations for his NUR 694 course (among other courses) which would ultimately be used to dismiss him from the program." More specifically, Dr. Gonzalez "deliberately [left] areas in the evaluation blank, which was not done to other students in the program in order to lower his grade artificially." The evaluations indicated that Tercier's performance in clinical settings was deficient.

● In the Summer of 2021, Tercier was placed at the Plantation General Hospital for clinical rotation. "Tercier was scheduled for 5 clinical days per week (as opposed to 3, like every other student in the program at the time)." Due to the rigorous workload, Tercier missed exams that conflicted with his clinical schedule and his grades suffered. The University, according to Tercier, "created a condition where passing was impossible."

● Tercier was dismissed from the nursing program approximately two months before graduation; the University subsequently denied Tercier's appeal of the dismissal decision.

In December 2021, Tercier sued the University on numerous grounds, alleging generally that the University, through certain faculty members, discriminated against him based on his "ethnicity/national origin and gender," and "created an environment of animosity intentionally designed to ensure Tercier's failure as a student at UM." The University moved to dismiss the complaint for failure to state a cause of action. Following a hearing, the trial court entered an order treating the motion to dismiss as a motion for more definite statement and requiring Tercier to file an amended complaint.

Tercier filed the operative amended complaint, making similar allegations as were made in the original complaint and asserting the following causes of action: breach of contract (Count I); breach of contract/good faith and fair dealing (Count II); negligent supervision (Count III); and injunctive relief (Count IV).

The University's 2020-2021 Doctor of Nursing Practice (DNP) Student Handbook was attached to the complaint and was alleged to serve as the basis for the breach of contract claim. More specifically, the complaint alleged the University violated several policies in the handbook's "Statement on Student Rights."

The University again moved to dismiss Tercier's amended complaint for failure to state a claim; Tercier filed a response in opposition. The trial

5

court held a special-set hearing on the motion at the conclusion of which it requested the parties submit competing proposed orders by 3:00 pm on July 1. Tercier submitted his proposed order and served it contemporaneously on opposing counsel. Thirty minutes later, counsel for the University did the same. Three hours later, the trial court adopted the University's proposed order verbatim, granting the motion and dismissing the complaint with prejudice.

This appeal followed.

**ANALYSIS AND DISCUSSION**

We review the trial court's order on a motion to dismiss de novo. Williams Island Ventures, LLC v. de la Mora, 246 So. 3d 471, 475 (Fla. 3d DCA 2018). "A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues. . . ." The Fla. Bar v. Greene, 926 So. 2d 1195, 1199 (Fla. 2006). When ruling on a motion to dismiss, a trial court is generally limited to the four corners of the complaint and its attachments, and must accept all well-pled factual allegations as true, drawing all reasonable inferences in favor of the pleader. Chakra 5, Inc. v. City of Miami Beach, 254 So. 3d 1056 (Fla. 3d DCA 2018); Minor v. Brunetti, 43 So. 3d 178 (Fla. 3d DCA 2010). Issues of statutory construction are also reviewed de novo. Zingale v. Powell, 885 So. 2d 277, 280 (Fla. 2004).

6

We note at the outset that Tercier's appeal addresses the dismissal of only two counts of his amended complaint: breach of contract (Count I) and negligent supervision (Count III), thereby abandoning any challenge to that portion of the order dismissing Counts II (breach of good faith and fair dealing) and IV (injunctive relief).[1]  See Bath Club Entm't, LLC v. Residences at Bath Club Maint. Ass'n, 355 So. 3d 999, 1001 n.3 (Fla. 3d DCA 2023) ("If an appellant fails to raise an argument in its initial brief, that argument is deemed abandoned") (citing Gen. Mortg. Assoc., Inc. v. Campolo Realty & Mortg. Corp., 678 So. 2d 431, 431 (Fla. 3d DCA 1996)).

---

[1] We also note Tercier is procedurally barred from pursuing his claim that the trial court erred in not allowing him further leave to amend the amended complaint prior to entering a dismissal with prejudice. A review of the record reveals that Tercier never requested further leave to amend, nor filed a proposed second amended complaint.  Even after the dismissal order was rendered, Tercier chose to appeal it rather than moving for rehearing and seeking to avoid a with-prejudice dismissal by requesting further leave to amend. By doing so, Tercier has failed to preserve the issue for appeal. Orlando Bar Grp., LLC v. DeSantis, 339 So. 3d 487, 494 (Fla. 5th DCA 2022) (finding issue not preserved where: "Appellants did not move for leave to amend, did not file a proposed amended complaint, and appealed rather than moving for rehearing on the dismissal being with prejudice") (citing Vorbeck v. Betancourt, 107 So. 3d 1142, 1147-48 (Fla. 3d DCA 2012) ("It is now well settled that the rule of preservation applies to the improper dismissal of a complaint with prejudice"); Century 21 Admiral's Port, Inc. v. Walker, 471 So. 2d 544, 545 (Fla. 3d DCA 1985) (rejecting review of dismissal with prejudice on the basis that "appellants' failure to seek leave to amend prior to the dismissal with prejudice or to move for rehearing requesting leave to amend, precludes consideration of the issue for the first time on appeal").

**Breach of Contract Claim**

The underlying basis for the breach of contract claim is the 2020-21 student handbook attached to the complaint. The trial court correctly found that, because Tercier alleged he enrolled in the program in 2017, he was required to rely on the provisions contained in the 2017 handbook. Sharick v. Se. Univ. of Health Sciences, Inc., 780 So. 2d 136, 138 (Fla. 3d DCA 2000) ("It is generally accepted that the terms and conditions for graduation are those offered by the publications of the college at the time of enrollment. As such, they have some of the characteristics of a contract between the parties, and are sometimes subject to civil remedies in courts of law") (quoting Univ. of Miami v. Militana, 184 So. 2d 701, 704 (Fla. 3d DCA 1966)). Regardless, even if Tercier could rely upon the 2020-21 handbook, dismissal was proper because Tercier failed to allege a legally sufficient breach of contract claim premised upon violation of the University's policies contained in that year's student handbook.

Tercier contends the contract between himself and the University consists of "all enrollment agreements, student handbooks, syllabi, school policies and publications (including statements by faculty and staff)." He further contends the University breached the parties' contract "numerous times throughout the pendency of Tercier's time as a student at [the

8

University]" by "creating an environment of animosity designed to ensure Tercier's failure. . . ."

The relationship between a private university and a student is "contractual in character." Sharick, 780 So. 2d at 138. In reviewing a university's dismissal of a student, courts have acknowledged a distinction between a "judicial fact finding process and academic judgment regarding the performance of students," e.g., when considering whether a student is qualified to be a physician. Id. To this end, "judicial review of a private educational institution's determination of academic performance in this context is limited to whether the challenged determination was arbitrary and capricious, irrational, made in bad faith, or in violation of constitution or statute." Id.

Tercier alleges in conclusory fashion that his dismissal was made in bad faith and in violation of the student handbook's broad policy statements, e.g., the handbook's Statement on Student Rights: "[t]he right to be educated and nurtured;" "[t]he right to be treated equally in academic and social settings;" "[t]he right to privacy;" "[t]he expectation of a positive living,/learning environment;" "[t]he right to learn without disruption;" "[a]ccess to academic and support services that enhance student learning;" and "[t]he right to know academic requirements and to be evaluated fairly."

An alleged violation of these broad policy statements is insufficient to state a claim for breach of contract against the University. While there is no Florida case law addressing this point, appellate decisions from other jurisdictions, which we find persuasive, reject the notion that a university's alleged violation of broad policy statements in its student handbook can serve as a basis for a breach of contract claim. See Shak v. Adelphi Univ., 549 F. Supp. 3d 267, 272 (E.D.N.Y. 2021) ("[O]nly specific promises . . . in a school's bulletins, circulars[,] and handbooks, which are material to the student's relationship with the school, are enforceable. In other words, [g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice") (citation and quotation omitted).  See also In re Columbia Tuition Refund Action, 523 F. Supp. 3d 414, 422 (S.D.N.Y. 2021) ("In general, to sustain a contract claim against a university, a student must point to a provision that guarantees certain specified services, not merely to a [g]eneral statement[ ] of policy, or to statements of opinion or puffery. Additionally, to state a valid claim for a breach of contract against a university, a student must state when and how the defendant breached the specific contractual promise") (quotations omitted); Oyoque v. DePaul Univ., 520 F. Supp. 3d 1058,1064 (N.D. Ill. 2021) ("Though a student handbook may contain material that forms part of the contract between a university and its students,

10

only the handbook's specific promises become part of the contract, not its expression[s] of intention, hope or desire") (quotation omitted).

We agree with this analysis, which fully supports the trial court's order of dismissal in the instant case. Tercier failed to identify a specific contractual promise the University breached, or how any of the purported acts by the University were related to his ethnicity or gender.

Further, the only potentially viable cause of action was for breach of contract based on the University's supposed violation of its own dismissal policy. However, this too fails on the face of the complaint, where Tercier acknowledges his poor grades and admits to failing one of his courses. As noted by the University, the student handbook provides that receiving a C or below in a course is a ground for dismissal. And again, Tercier's vague and conclusory allegations—that his poor grades were the result of the University faculty's actions designed to make him fail—were facially insufficient to state a cause of action or to allege a violation of the University's contract with Tercier.

For these reasons, we hold that the trial court properly dismissed the breach of contract claim for failure to state a cause of action.

11

**Negligent Supervision Claim**

Tercier's complaint alleges the University "knew or should have known that Dr. Gonzalez and Dr. Vladinova were exhibiting discriminatory animosity towards Tercier in an effort to ensure his failure in the program." According to Tercier, the University had "actual notice of these discriminatory practices when during his penultimate appeal(s) . . . he notified the appeals committee of such behavior by Dr. Gonzalez and Dr. Vladinova." Tercier alleges the University should have known this because Tercier was assigned additional clinic days and treated differently from his fellow classmates.

Florida recognizes a cause of action for negligent retention. See N. Miami Med. Ctr., Ltd. v. Miller, 896 So. 2d 886, 889 (Fla. 3d DCA 2005) (citing Garcia v. Duffy, 492 So. 2d 435, (Fla. 2d DCA 1986)). To prove such cause of action, the plaintiff must show: (1) the employer became aware or should have become aware that the subject employee was "unfit," and (2) the employer failed to take further action, e.g., investigation, discharge, reassignment. Bennett v. Godfather's Pizza, Inc., 570 So. 2d 1351, 1353 (Fla. 3d DCA 1990) ("Negligent retention ... occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment")

12

(quoting Garcia, 492 So. 2d at 438-39). "It is necessary that the underlying wrong—the actions of the employee or servant—be a tort," and that the employee's actions "be performed *outside* the scope of employment." Acts Ret.-Life Comtys. Inc. v. Est. of Zimmer, 206 So. 3d 112, 115 (Fla. 4th DCA 2016). See also John A. Chiocca & Chelsea Furman, Liability for an Employee's Intentional Torts, 38 NO. 3 Trial Advoc. (FDLA) 25 (2019) ("The torts of negligent hiring, or negligent retention/ supervision are fundamentally distinct from the employee's underlying, intentional wrong. However, it is necessary that the underlying wrong—the actions of the employee or servant—be a tort.")

Our review of the complaint fails to reveal any intentional tort that Tercier alleges these specific faculty members committed against him. Instead, the allegations of this count read more like those advanced in his breach of contract claim. For instance, Tercier makes various conclusory allegations of purportedly "discriminatory" acts by unidentified University employees, and several pertaining specifically to Dr. Gonzalez and Dr. Vladinova:

- They asked Tercier to resign from the program; when he refused (leading to his dismissal) and was readmitted, he "was immediately met with discrimination and retaliation."

13

● While working at the University of Miami Hospital, Dr. Vladinova "disseminated information concerning Tercier['s] recent dismissal to his colleagues and supervisors in an intentional effort to create unnecessary adversity and challenges to Tercier's pursuit of completing the program." The "dissemination" of such information, caused the other faculty and staff to "question Tercier about his dismissal fostering further animosity in the educational setting."

● Dr. Gonzalez provided a "falsified evaluation" for Tercier in NUR 694 by "deliberately leaving areas in the evaluation blank." These "falsified evaluations" further indicated "a deficiency in his performance in clinical settings when," according to Tercier, "no such deficiency existed." As proof of the latter, he cites to his "stellar marks" from other clinicians.

● In summer 2021, Dr. Gonzalez "continued the campaign to ensure Tercier's removal from the program," e.g., Tercier was scheduled for five clinical days per week (much more than his classmates) even though he had enough credits to graduate. This "excess work" caused Tercier's grades to suffer and created a "condition where passing was impossible."

Tercier contends that these actions amount to a campaign by Drs. Gonzalez and Vladinova to cause Tercier to fail from the program; however, none of them, individually or collectively, constitutes an intentional tort committed by a University employee. The allegations in Tercier's amended complaint are insufficient to state a cause of action against the University for negligent retention. We hold that the trial court properly dismissed the negligent supervision claim for failure to state a cause of action.

## Verbatim Adoption of the University's Proposed Order

Lastly, Tercier relies on the Florida Supreme Court's decision in Perlow v. Berg-Perlow, 875 So. 2d 383 (Fla. 2004), to contend that, by adopting the University's proposed order hours after it was submitted, the trial court created an appearance that it failed to exercise its independent judgment in deciding the case, i.e., "an appearance of impropriety." We conclude the trial court did not commit reversible error where it requested proposed orders from both parties; both parties submitted their competing orders and served opposing counsel with their respective proposed orders; the record supports the trial court's ruling; the trial court made no oral pronouncements at the hearing inconsistent with the order it subsequently adopted; and there is nothing in the record to indicate that the trial court failed to exercise its independent judgment.

Initially, we note that "Florida law does not prohibit the adoption, verbatim, of a judgment that has been proposed by a party to the litigation" Smith v. Wallace, 249 So. 3d 670, 672 (Fla. 2d DCA 2017); In re T.D. v. Dep't of Children & Family Servs., 924 So. 2d 827, 831 (Fla. 2d DCA 2005) (no "post-Berg-Perlow decisions of this court requires reversal solely on the ground that a trial court has adopted a judgment prepared by one of the parties"). See also Kendall Healthcare Grp., Ltd. v. Madrigal, 271 So. 3d 1120, 1122 (Fla. 3d DCA 2019) (rejecting appellant's argument "that the trial judge failed to exercise his independent judgment merely because he adopted verbatim [appellee's] proposed order"). Instead, "what is critical for a reviewing court is that a final judgment reflect the trial judge's independent decision on the issues of a case, not that the judge used words drafted by one of the parties to express that decision." Flint v. Fortson, 744 So. 2d 1217, 1220 (Fla. 4th DCA 1999).

In Perlow, the Florida Supreme Court held that a trial court's verbatim adoption of a proposed final judgment in a dissolution of marriage case, following a lengthy trial, was reversible error where: 1) the wife's proposed final judgment was twenty-five pages in length with six additional pages of financial exhibits incorporated by reference; 2) the wife's proposed final judgment was adopted by the trial court within two hours of its submission,

without any additions, changes, or deletions; 3) the trial judge did not permit the husband an opportunity to submit his own proposed final judgment or object to the wife's proposed final judgment;  and 4) the trial judge had not announced any findings of fact or determinations of law at the conclusion of the trial.  Perlow, 875 So. 2d at 389.

The Florida Supreme Court concluded that, given these circumstances, "there was an appearance that the trial judge did not independently make factual findings and legal conclusions, i.e., an appearance of impropriety." Id.

Although it is true that, in the instant case, the trial court adopted the University's proposed order verbatim within three hours of its submission, there are additional circumstances which distinguish it from Perlow:

- The final judgment in Perlow was issued following a 15-day trial in a dissolution of marriage case. The instant case involves a non-evidentiary hearing lasting 22 minutes, consisting solely of legal argument addressing whether the operative complaint (whose well-pled allegations must be accepted as true) stated a cause of action.

- The proposed final judgment in Perlow was 25 pages long, plus six pages of financial exhibits, and consisted of factual findings relating to predominating issues of parental responsibility and time sharing, see

17

section 61.13(3)(a)-(t), Florida Statutes (delineating 20 factors a trial court is statutorily required to consider in making such determinations), and were based upon extensive testimony and other evidence introduced at the fifteen-day trial, including a determination that the mother would be awarded sole parental responsibility; that the father would be prohibited from having contact with the child for a period of time because such contact would be detrimental to the child; and concluding that the husband engaged in vexatious litigation and ordering him to pay attorney's fees. By contrast, the final judgment in the instant case was five and a half pages long; was the result of a non-evidentiary limited to a review of the four corners of the complaint and attachments; required no findings of fact and no weighing of testimony or determinations of credibility; and required a threshold legal determination of whether the allegations were sufficient to state a cause of action.

● Finally, the determinations contained in the instant order on appeal are fully supported by the record, and the trial court made no oral pronouncements at the hearing inconsistent with the order submitted by the University and adopted by the trial court. See In re T.D., 924 So. 2d at 830 n.2 (holding that "if all parties have prepared proposed

18

judgments, their own submissions would likely apprise the judge of their positions and their disagreements with the opposing party's"); Cabrera v. Cabrera, 987 So. 2d 753, 755 (Fla. 3d DCA 2008) ("The trial court's active participation in the proceedings supports our conclusion that there is no appearance that the trial court did not exercise its independent judgment when entering the final judgment in the instant case.")

We conclude Tercier has not made any showing that the trial court failed to exercise its independent judgment in this case. Nevertheless, given Perlow's admonition that a party's proposed order "cannot substitute for a thoughtful and independent analysis of the facts, issues, and law by the trial judge," Perlow, 875 So. 2d at 390, we continue to encourage trial courts to make oral findings, when possible, to help guide the attorneys and parties who have been asked to submit proposed and competing orders that include findings of fact and conclusions of law. And while the submission of competing orders may further the goal of having the parties affirmatively declare their respective positions, the trial court should consider, if practicable, allowing a reasonable amount of time for one party to register objections to the opposing party's proposed order. We must be ever-mindful that "justice must satisfy the appearance of justice," Offutt v. United States,

348 U.S. 11, 13 (1954), and that the requirement of a neutral arbiter

"preserves both the appearance and reality of fairness . . . by ensuring that

no person will be deprived of his interests in the absence of a proceeding in

which he may present his case with assurance that the arbiter is not

predisposed to find against him."  Marshall v. Jerrico, Inc., 446 U.S. 238, 242

(1980).

Affirmed.