DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE K COMPANY REALTY LLC**
d/b/a **LOKATION LLC,**
Appellant,

v.

**MARC-JEAN PIERRE,**
Appellee.

No. 4D2022-2440

[December 20, 2023]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Louis H. Schiff, Judge; L.T. Case No. CONO20-021933.

Sara Sandler Cromer of Walton Lantaff Schroeder & Carson LLP, Fort Lauderdale, for appellant.

Ria Sankar Balram of Ria Balram Law Group, PLLC, Coral Springs, for appellee.

DAMOORGIAN, J.

This appeal arises out of a failed real estate transaction in which the plaintiff below, Marc-Jean Pierre ("Buyer"), retained Violette Desantus ("Realtor") to represent him in the purchase of real property. At the time, Realtor was affiliated with a real estate brokerage firm known as The K Company Realty LLC d/b/a Lokation LLC ("Brokerage"). Buyer sued Realtor and Brokerage for the return of his deposits. Following a hearing, the court entered final summary judgment in favor of Buyer, awarded Buyer attorney's fees, and found all defendants jointly and severally liable. Finding merit in Brokerage's argument that genuine issues of material fact remain as to its direct and vicarious liability, we reverse.[1]

---

[1] Our holding renders Brokerage's other arguments on appeal moot, including the argument that the court erred in finding it liable for attorney's fees. We nonetheless point out that because Brokerage was not a party to the subject sale and purchase contract, attorney's fees are not awardable against Brokerage under the sales contract. *See Hinkley v. Gould, Cooksey, Fennell, O'Neill, Marine, Carter & Hafner, P.A.*, 971 So. 2d 955, 957 (Fla. 5th DCA 2007).

The undisputed facts in this case are as follows. On January 5, 2020, Buyer entered into a residential sale and purchase contract to purchase real property located in Margate, Florida (the "Pierre Contract"). The first page of the Pierre Contract includes what appears to be Brokerage's logo, and the last page lists Realtor as the cooperating sales associate and Brokerage as the cooperating broker. The Pierre Contract lists the purchase price as $68,000 and requires an initial deposit of $1,000 to be submitted to an escrow agent named "Closing Team." The Pierre Contract also lists the balance to close as $16,000.

Unbeknownst to Buyer, on the same day the Pierre Contract was executed, an entity named E&C Capital Investments Corp. ("E&C Capital") entered into a contract to purchase the same subject property (the "E&C Capital Contract"). Notably, Realtor is an owner and officer of E&C Capital. As with the Pierre Contract, the first page of the E&C Capital Contract includes what appears to be Brokerage's logo, and the last page lists Realtor as the cooperating sales associate and Brokerage as the cooperating broker.

Consistent with the terms of the Pierre Contract, Buyer made an initial escrow deposit of $1,000 to "Closing Team," and the check was deposited on January 13, 2020. Two days later, Buyer delivered to Realtor a cashier's check in the amount of $17,000 to serve as his total deposit for the purchase of the subject property. At Realtor's direction, the check was made payable to E&C Capital. It is undisputed that the $17,000 was not deposited with an escrow agent. Instead, the funds were deposited into an account controlled by E&C Capital and accessible to Realtor.

After the closing date was delayed several times, Buyer made a formal demand to Realtor for the return of his deposits. Realtor responded that the funds were not available and that she used a portion of the funds to pay for funeral expenses. Buyer then sent demand letters to both Realtor and Brokerage for the return of his deposits, but received no payments.

In November 2020, Buyer filed a multi-count lawsuit against Realtor, Brokerage, E&C Capital, and Erica Capita, the president of E&C Capital. The complaint included the following relevant counts: (1) breach of agreement against Realtor and Brokerage; (2) negligence against Realtor and Brokerage; and (3) negligent supervision against Brokerage. The breach of agreement and negligence counts were based on vicarious liability, and the negligent supervision count was based on direct liability.

Buyer ultimately moved for summary judgment on all counts. As to the breach of agreement count, the motion argued Realtor's conduct amounted "to a breach of her fiduciary duty owed to [Buyer] as his trusted realtor" and that "[Brokerage] also owed the same fiduciary duties to [Buyer] as they are vicariously liable for the actions of their agent." As to the negligence and negligent supervision counts, which Buyer lumped together, the motion argued Realtor and Brokerage "had a duty of care to [Buyer] to represent him in locating and purchasing the property" and that "[Brokerage] breached their duty of care by failing to supervise the actions of [Realtor] and by ignoring the notice received of her actions."

Brokerage filed a response in opposition to the motion for summary judgment, as well as the affidavit of its managing broker. In the affidavit, the managing broker attested to the following:

- Realtor joined Brokerage as an independent contractor in 2018, and executed an independent contractor agreement.

- Realtor did not have the consent of Brokerage to collect any funds directly from Buyer in connection with the contemplated real estate transaction, and Brokerage was never advised that Realtor collected funds from Buyer.

- Brokerage was not privy to Realtor's actions and had no knowledge of the Pierre Contract, the E&C Capital Contract, any payments made by Buyer to E&C Capital, or of any communications between Buyer and Realtor.

- Realtor's misconduct was unknown to Brokerage, and amounted to intentional acts which were unauthorized, unexpected and outside the scope of Realtor's employment.

- Brokerage did not consent to Realtor's actions, and was first made aware of Realtor's misconduct when it received Buyer's demand letter in July 2020.

- Brokerage did not benefit in any way from Realtor's actions, and was not paid a commission or any other fee.

Attached to the affidavit was a copy of the independent contractor agreement. In relevant part, the agreement states Brokerage "does NOT maintain an escrow account" and that "[a]ll escrow services are provided by our affiliate title company, Florida Title & Escrow Services, LLC."

3

Following a hearing on Buyer's motion, the county court entered final summary judgment in favor of Buyer on all of the counts asserted against Brokerage.  This appeal follows.

## Vicarious Liability Counts

"General principles of vicarious liability establish that a principal is responsible for the wrongful acts of its agent if the agent was either acting '(1) within the scope of [its authority], or (2) during the course of [the agency] and to further a purpose or interest of the [principal].'" *Trevarthen v. Wilson*, 219 So. 3d 69, 72 (Fla. 4th DCA 2017) (alteration in original) (quoting *Valeo v. E. Coast Furniture Co.*, 95 So. 3d 921, 925 (Fla. 4th DCA 2012)).

> An [agent's] conduct is within the scope of his employment, for purposes of determining [a principal's] vicarious liability to third persons injured by the [agent], if the conduct: (1) is of the kind the [agent] is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the [principal].

*Desvarieux v. Bridgestone Retail Operations, LLC*, 300 So. 3d 723, 728 (Fla. 3d DCA 2020).  A principal may also "be liable for the acts of its agent which were outside the scope of the agent's authority if the principal subsequently ratifies the actions."  *Trevarthen*, 219 So. 3d at 72.  "A principal may ratify an agent's actions which would have otherwise been outside the scope of its authority by accepting the benefit of the agent's actions."  *Id.*

The issue of "[w]hether an [agent's] act was committed within the scope of his employment or in furtherance of the [principal's] interest generally presents a question for the jury when there are varying inferences and conclusions to be drawn."  *Woods v. City of Mia.*, 646 So. 2d 836, 836 (Fla. 3d DCA 1994); *accord Ford v. Fla. Dep't of Transp.*, 855 So. 2d 264, 265 (Fla. 4th DCA 2003).  "Concerning scope of employment, only where the facts are completely settled and the inferences to be drawn from the facts lead to but one conclusion can it be said that the issue is one which may be decided by the court as a matter of law."  *Woods*, 646 So. 2d at 836 (quoting *Burroughs Corp. v. Am. Druggists' Ins. Co.*, 450 So. 2d 540, 544 (Fla. 2d DCA 1984)).

4

In the present case, the facts are far from settled regarding the issue of whether Realtor's actions were committed within the scope of her authority or in furtherance of Brokerage's interests. On the one hand, it is undisputed that Realtor was associated with Brokerage at all material times and that Brokerage is listed as the broker in the Pierre Contract. On the other hand, it is also undisputed that: (1) Buyer made the initial $1,000 escrow deposit to "Closing Team," and not to Brokerage's affiliate title company—Florida Title & Escrow Services, LLC—as required under Realtor's independent contractor agreement; (2) Realtor directed Buyer to make the $17,000 closing deposit check payable to E&C Capital, a company which Realtor owns; (3) the $17,000 was not deposited with an escrow agent or Brokerage; (4) Brokerage did not receive any commissions or fees related to the Pierre Contract; and (5) Realtor used a portion of the funds for personal expenses.

When the undisputed facts in this case are considered in conjunction with the managing broker's affidavit, it is clear that varying inferences and conclusions may be drawn. One such inference being that Realtor's actions were not motivated by a purpose to serve Brokerage, i.e., that Realtor was not acting within her scope of authority or in furtherance of Brokerage's interests. Another inference being that Brokerage did not ratify Realtor's actions because Brokerage did not receive any monetary or non-monetary benefit from the Pierre Contract. Thus, the evidence is such that a reasonable jury could return a verdict for Brokerage, thereby precluding summary judgment in Buyer's favor. *See Lloyd S. Meisels, P.A. v. Dobrofsky*, 341 So. 3d 1131, 1134 (Fla. 4th DCA 2022) ("In applying the amended [summary judgment] rule, the correct test for the existence of a genuine factual dispute is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (citations and internal quotation marks omitted)).

Accordingly, we hold the court erred in entering summary judgment on the breach of agreement and negligence counts asserted against Brokerage.

### Direct Liability Count

"Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *ACTS Ret.-Life Cmtys. Inc. v. Est. of Zimmer*, 206 So. 3d 112, 114 (Fla. 4th DCA 2016) (citation omitted). Stated differently, negligent supervision occurs when the defendant negligently places the plaintiff under the

5

supervision of an employee whom the defendant either knew or should have known had the propensity to commit the alleged torts. *Id.*

Thus, to prevail on the negligent supervision count at the summary judgment stage, Buyer was required to establish no genuine dispute existed as to whether: (1) Realtor was acting within the course of her employment with Brokerage when she committed the torts alleged in the complaint; and (2) Brokerage was aware, or should have been aware, of problems with Realtor that indicated her propensity to commit the torts alleged in the complaint.

As reflected in the analysis for the vicarious liability counts, material issues of fact undoubtedly remain regarding whether Realtor was acting within the scope of her authority when the torts were committed. Moreover, regarding the knowledge component, neither the complaint nor the motion for summary judgment alleged Brokerage knew or should have known about Realtor's propensity to commit the torts committed *when Brokerage purportedly placed Buyer under the supervision of Realtor.* Instead, the complaint alleged Brokerage was notified of Realtor's misconduct via the presuit demand letter, which was sent several months *after* the misconduct occurred. This is significant because, if Brokerage had no knowledge of Realtor's propensity to commit the torts committed until after the fact, no proximate cause exists. *See ACTS Ret.-Life Cmtys. Inc.,* 206 So. 3d at 116 (holding, in the context of negligent supervision, that the plaintiff "failed to establish any reason that [the employer] knew or should have known about a propensity for [the employee] or other employees to [commit the torts committed]. That is, until [the employer] was notified by [plaintiff's] son of the [torts committed]."); *Dep't of Env't Prot. v. Hardy,* 907 So. 2d 655, 660–61 (Fla. 5th DCA 2005) (reiterating that for purposes of a negligent supervision claim, "not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm. There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee." (internal citation omitted)).

Accordingly, we hold the court also erred in entering summary judgment on the negligent supervision count asserted against Brokerage.

*Reversed and remanded for further proceedings.*

MAY and FORST, JJ., concur.

\*　　\*　　\*

6

*Not final until disposition of timely filed motion for rehearing.*